**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISION**

| | | |
|---|---|---|
| APRIL LENORE MOYERS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:24-cv-01719-NAD |
| | ) | |
| SOCIAL SECURITY | ) | |
| ADMINISTRATION, | ) | |
| COMMISSIONER, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER
<u>AFFIRMING THE DECISION OF THE COMMISSIONER</u>**

Pursuant to 42 U.S.C. § 405(g), Plaintiff April Moyers appeals the decision of

the Commissioner of the Social Security Administration ("Commissioner") on her

claim for disability insurance benefits.  Doc. 1.  Plaintiff Moyers applied for benefits

with an alleged onset date of June 30, 2018.  Doc. 10-5 at 2.  The Commissioner

denied Moyers' claim for benefits.  Doc. 10-3 at 37.  In this appeal, the parties

consented to magistrate judge jurisdiction.  Doc. 9; 28 U.S.C. § 636(c); Fed. R. Civ.

P. 73.

After careful consideration of the parties' submissions, the relevant law, and

the record as a whole, the court **AFFIRMS** the Commissioner's decision.

**ISSUE FOR REVIEW**

In this appeal, Moyers argues that the decision of the Administrative Law

1

Judge (ALJ) is unsupported by substantial evidence and the product of legal error because the ALJ failed to properly evaluate the medical opinion of Don Litchfield, DC.  Doc. 14 at 11–16.

## STATUTORY AND REGULATORY FRAMEWORK

A claimant applying for Social Security benefits bears the burden of proving disability.  *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).  To qualify for disability benefits, a claimant must show disability, which is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see* 20 C.F.R. § 404.1505.

A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).

The Social Security Administration (SSA) reviews an application for disability benefits in three stages:  (1) initial determination, including reconsideration; (2) review by an ALJ; and (3) review by the SSA Appeals Council. *See* 20 C.F.R. § 404.900(a)(1)–(4).

When a claim for disability benefits reaches an ALJ as part of the

administrative process, the ALJ follows a five-step sequential analysis to determine whether the claimant is disabled.  The ALJ must determine the following:

(1)    whether the claimant is engaged in substantial gainful activity;

(2)    if not, whether the claimant has a severe impairment or combination of impairments;

(3)    if so, whether that impairment or combination of impairments meets or equals any "Listing of Impairments" in the Social Security regulations;

(4)    if not, whether the claimant can perform his past relevant work in light of his "residual functional capacity" or "RFC"; and,

(5)    if not, whether, based on the claimant's age, education, and work experience, he can perform other work found in the national economy.

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see Winschel v. Commissioner of Soc. Sec. Admin.*, 631 F.3d 1176, 1178 (11th Cir. 2011).

The Social Security regulations "place a very heavy burden on the claimant to demonstrate both a qualifying disability and an inability to perform past relevant work." *Moore*, 405 F.3d at 1211.  At step five of the inquiry, the burden temporarily shifts to the Commissioner "to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform." *Washington v. Commissioner of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018) (quoting *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)).  If the Commissioner makes that showing, the burden then shifts back to the claimant to

show that he cannot perform those jobs. *Id.* So, while the burden temporarily shifts to the Commissioner at step five, the overall burden of proving disability always remains on the claimant. *Id.*

## STANDARD OF REVIEW

The federal courts have only a limited role in reviewing a plaintiff's claim under the Social Security Act. The court reviews the Commissioner's decision to determine whether "it is supported by substantial evidence and based upon proper legal standards." *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997).

**A.** With respect to fact issues, pursuant to 42 U.S.C. § 405(g), the Commissioner's "factual findings are conclusive if supported by 'substantial evidence.'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Commissioner of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004).

In evaluating whether substantial evidence supports the Commissioner's decision, a district court may not "decide the facts anew, reweigh the evidence," or substitute its own judgment for that of the Commissioner. *Winschel*, 631 F.3d at 1178 (citation and quotation marks omitted); *see Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (similar). If the ALJ's decision is supported by substantial evidence, the court must affirm, "[e]ven if the evidence preponderates against the

4

Commissioner's findings." *Crawford*, 363 F.3d at 1158 (quoting *Martin*, 894 F.2d at 1529).

But "[t]his does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden*, 672 F.2d at 838 (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)); *see Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987). "The ALJ must rely on the full range of evidence . . . , rather than cherry picking records from single days or treatments to support a conclusion." *Cabrera v. Commissioner of Soc. Sec.*, No. 22-13053, 2023 WL 5768387, at *8 (11th Cir. Sept. 7, 2023).

**B.** With respect to legal issues, "[n]o . . . presumption of validity attaches to the [Commissioner's] legal conclusions, including determination of the proper standards to be applied in evaluating claims." *Walker*, 826 F.2d at 999. And the Commissioner's "failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Cornelius v. Sullivan*, 936 F.2d 1143, 1145–46 (11th Cir. 1991).

## BACKGROUND

### A. Procedural background

On November 4, 2020, Moyers filed an application for disability insurance

benefits (DIB), alleging disability beginning June 30, 2018.  Doc. 10-5 at 2.

Moyers' application was denied at the initial level (and on reconsideration).
Doc. 10-5 at 8, 17.  After Moyers agreed to appear by telephone, the ALJ held a
telephonic hearing on December 6, 2022.  Doc. 10-5 at 23.  On March 9, 2023, the
ALJ issued an unfavorable decision.  Doc. 10-5 at 35.

On July 26, 2023, the Appeals Council remanded Moyers' case to the ALJ.
Doc. 10-5 at 41–44.  The Appeals Council found that the "hearing decision [did] not
contain an evaluation of opinion evidence from Don Litchfield, D.C., a licensed
chiropractor."  Doc. 10-5 at 43.

On November 2, 2023, the ALJ held another hearing.  Doc. 10-3 at 76.  On
March 11, 2024, the ALJ issued an unfavorable decision.  Doc. 10-3 at 37.

The Appeals Council denied Moyers' request for review.  Doc. 10-3 at 6.
Because the Appeals Council found no reason to review the ALJ's decision, the
ALJ's decision became the final decision of the Commissioner on October 18, 2024.
Doc. 10-3 at 6; *see* 42 U.S.C. § 405(g).

**B.    Factual background and ALJ hearing**

Moyers was born July 18, 1956.  Doc. 10-3 at 78.

On September 14, 2017, Moyers presented to Medical Associates of the
Shoals for a checkup.  Doc. 10-10 at 52.  Moyers reported that she had not been
taking any of her medications.  Doc. 10-10 at 52.  Moyers reported that she was in a

motor vehicle accident on August 25, 2017, and was having problems with her right foot, right knee, left foot, and neck.  Doc. 10-10 at 52.

On September 25, 2017, Moyers presented to North Alabama Bone & Joint after an automobile accident on August 25, 2017.  Doc. 10-10 at 25.  After the accident, Moyers was diagnosed with a hairline fracture to her right foot and experienced pain in her left foot.  Doc. 10-10 at 25.  A physical examination revealed pain in Moyers' right knee, right ankle, and right foot.  Doc. 10-10 at 26.  X-rays were ordered, taken, and interpreted, showing that Moyers' left ankle, right knee, right foot, and right ankle were all normal or unremarkable.  Doc. 10-10 at 26.

On May 1, 2018, Moyers presented to North Alabama Bone & Joint for a follow-up appointment.  Doc. 10-10 at 32.  Moyers reported that her right knee was hurting and was not staying in place.  Doc. 10-10 at 32.  An MRI report of Moyers' right knee was reviewed, and "showed a questionable torn lateral meniscus."  Doc. 10-10 at 33.

On June 28, 2018, Moyers presented to North Alabama Bone & Joint for continuing right knee pain.  Doc. 10-10 at 30.  Moyers wanted "to discuss getting surgery."  Doc. 10-10 at 30.

On July 2, 2018, Moyers presented to Medical Associates of the Shoals for routine labs.  Doc. 10-10 at 47.

On July 12, 2018, Moyers presented to North Alabama Bone & Joint for a

two-week post-op appointment for her right knee arthroscopy and partial and lateral meniscectomy, which was done on June 29, 2018.  Doc. 10-10 at 28.  Moyers reported she was doing well and denied pain or swelling to her knee.  Doc. 10-10 at 28.

On October 3, 2018, Moyers presented to Medical Associates of the Shoals for headaches and trouble controlling her blood sugar.  Doc. 10-10 at 42.

On March 10, 2020, Moyers presented to Clarity Health for a psychological assessment with Jack C. Carney, Ph.D.  Doc. 10-10 at 68.  Moyers reported problems with diabetes and balance problems following a motor vehicle accident.  Doc. 10-10 at 69.  Moyers reported having "some memory problems" and low energy.  Doc. 10-10 at 70.  Moyers also reported trouble sleeping and a diminished ability to think and concentrate.  Doc. 10-10 at 71.  Carney diagnosed Moyers with moderate major depressive disorder with anxious distress.  Doc. 10-10 at 77.  Carney opined that Moyers "does appear to possess the ability to understand, carry out and remember instructions in a work setting" and that she "does appear to possess the ability to respond appropriately to supervision, co-workers, and work pressures in a work setting."  Doc. 10-10 at 77.

On September 23, 2020, Moyers presented to Cardiovascular Institute of Shoals to establish primary care.  Doc. 10-10 at 92.  Moyers reported that she had been diabetic for several years and was taking Metformin.  Moyers reported that she

had a meniscus repair and had seen a chiropractor for right knee pain.  Doc. 10-10 at 92.

On October 9, 2020, Moyers presented to Cardiovascular Institute of Shoals to review lab results.  Doc. 10-10 at 86.  Moyers was instructed to adopt a healthier lifestyle, lose weight, and exercise.  Doc. 10-10 at 90.

On January 14, 2021, Moyers presented to Cardiovascular Institute of Shoals for a checkup and refills on medication.  Doc. 10-10 at 79.  Moyers reported sharp tingling pain in her lower abdomen and left leg and low back pain.  Doc. 10-10 at 79.

On March 11, 2021, Moyers presented to Avalon Medical Group for a social security disability consultative examination with Laura M. Lindsey, MD.  Doc. 10-10 at 110.  Moyers reported that she had been diagnosed with diabetes mellitus and hyperlipidemia.  Doc. 10-10 at 110.  Moyers reported that she was able to bathe, groom, and dress herself and that she was able to drive and do housework with her husband.  Doc. 10-10 at 111.  Dr. Lindsey found that Moyers was able to sit, stand, walk, hear, speak, carry, lift, travel, and handle objects independently.  Doc. 10-10 at 113.

On April 7, 2021, at the initial level, state agency psychiatric consultant Joanna Koulianos, Ph.D., found that Moyers had a mild mental limitation in understanding, remembering, and applying information; interacting with others;

concentrating, persisting, or maintaining pace; and in adapting and managing oneself.  Doc. 10-5 at 5.

On April 22, 2021, Moyers presented to Cardiovascular Institute of Shoals for a checkup and refills and to discuss labs.  Doc. 10-12 at 37.  Moyers complained of fatigue and of feeling imbalanced and dizzy.  Doc. 10-12 at 37.  Moyers reported lower abdominal pain and left leg pain after falling.  Doc. 10-12 at 37.  Moyers was counseled on the importance of being compliant with medication, diet, exercise, and glucose monitoring.  Doc. 10-12 at 42.

On July 21, 2021, Moyers presented to Shoals Radiology Associates, P.C. for a CT scan of her pelvis.  Doc. 10-12 at 61.  The scan showed no evidence of acute or healing pelvic fracture but showed minor degenerative changes.  Doc. 10-12 at 61.

On August 9, 2021, Moyers presented to Cardiovascular Institute of Shoals for a three-month recheck.  Doc. 10-12 at 24.  Moyers reported that she saw a chiropractor the day before.  Doc. 10-12 at 24.

On October 20, 2021, Moyers presented to Cardiovascular Institute of Shoals for a checkup and medication refills.  Doc. 10-12 at 11.  Moyers admitted that she had been "very non-compliant with meds and diet [over the] last few months."  Doc. 10-12 at 17.  Moyers was encouraged to follow a low fat and low cholesterol diet. Doc. 10-12 at 17.

10

On February 15, 2022, Moyers presented to Cardiovascular Institute of Shoals for a lab review.  Doc. 10-12 at 4.  Moyers reported left leg tingling and numbness that she attributed to a fall 14 months prior.  Doc. 10-12 at 4.  Moyers reported issues with diabetic neuropathy and admitted to poorly controlling her diet.  Doc. 10-12 at 4.  Recent labs revealed hyperlipidemia.  Doc. 10-12 at 4.  Moyers was encouraged to be more compliant with her cholesterol medication and to keep her glycemic index under control.  Doc. 10-12 at 9.

From February 2022 to June 2022, Moyers underwent physical therapy at TherapySouth, LLC for muscle spasms, joint derangement, weakness, and dizziness. *See, e.g.*, Doc. 10-12 at 74, 80, 133; Doc. 10-14 at 22.

On April 27, 2022, Moyers presented to Avalon Medical Group for a social security disability consultative examination with Laura M. Lindsey, MD.  Dr. Lindsey diagnosed Moyers with diabetes mellitus type 2, hyperlipidemia, and back and abdominal pain after a fall.  Doc. 10-12 at 108.  Dr. Lindsey found that Moyers was able to sit, stand, walk, hear, speak, carry, lift, travel, and handle objects independently.  Doc. 10-12 at 108.  Dr. Lindsey also found that Moyers did not appear limited by her medical conditions.  Doc. 10-12 at 108.

On April 27, 2022, Moyers underwent a psychological evaluation with James B. Lindsey, Psy.D.  Doc. 10-12 at 100.  Moyers reported that she "sometimes has depression" and feels "sad and sometimes helpless."  Doc. 10-12 at 100.  Moyers

11

reported decision, sleeplessness, fatigue, fluctuating appetite, and a stable weight. Doc. 10-12 at 100. Moyers also reported a history of suicidal ideations but no current suicidal ideations. Doc. 10-12 at 100. Lindsey found that Moyers' complaints "appear to be most consistent with major depressive disorder." Doc. 10-12 at 100. Lindsey also found that Moyers' memory was intact, and her concentration, attention, fund of information, abstraction, and judgment were average. Doc. 10-12 at 103.

On May 10, 2022, at the reconsideration level, state agency psychiatric consultant George Grubbs, Psy.D. found that Moyers had a mild mental limitation in understanding, remembering, and applying information; interacting with others; concentrating, persisting, or maintaining pace; and in adapting and managing oneself. Doc. 10-5 at 14.

On May 23, 2022, Moyers presented to Cardiovascular Institute of Shoals for a follow-up appointment. Doc. 10-14 at 51. Moyers was educated on the importance of complying with her medication. Doc. 10-14 at 58.

On June 8, 2022, Moyers presented to Cardiovascular Institute of Shoals for issues with her back and neck. Doc. 10-14 at 42. Moyers reported that physical therapy was helping with her numbness and weakness but that she needed physical therapy for her neck as well. Doc. 10-14 at 42. Moyers was referred to Dr. Pavan Telang for back pain. Doc. 10-14 at 50.

On June 16, 2022, Moyers presented to Alabama Spine and Pain for pain in her back and leg. Doc. 10-14 at 101. Moyers was instructed to start a home exercise program and to continue heat, rest, ice and TENS unit. Doc. 10-14 at 106.

On June 23, 2022, Moyers had an MRI at Shoals Radiology Associates. Doc. 10-15 at 29. The MRI showed disc bulge with facet arthropathy and effusions at L4-5 causing moderate to severe right or left neuroforaminal narrowing with possible L4 nerve root impingement. Doc. 10-15 at 29.

On June 27, 2022, Moyers presented to Alabama Spine and Pain for pain in her back, leg, neck, and arm. Doc. 10-14 at 92. Moyers reported that her pain is a 4 out of 10 at its worst. Doc. 10-14 at 92.

On August 22, 2022, Moyers presented to Cardiovascular Institute of Shoals for a follow-up and for a sick visit. Doc. 10-14 at 33. Moyers' labs showed that she was anemic. Doc. 10-14 at 40. Moyers was put on Ozempic to help control her blood sugar, and she was counseled on healthy eating and exercise. Doc. 10-14 at 40.

On September 7, 2022, Moyers received a lumbar epidural steroid injection for back pain at Alabama Spine and Pain. Doc. 10-15 at 16.

On October 10, 2022, Moyers presented to Alabama Spine and Pain for pain in her back, leg, neck, and arm. Doc. 10-14 at 80. Moyers reported that her pain is a 4 out of 10 at its worst. Doc. 10-14 at 80. Moyers reported constant tingling and

13

numbing pain that is significantly worsened by sitting too long or walking.  Doc. 10-14 at 80.

On November 11, 2022, Flora Kayfan, MD, completed a "Medical Opinion – Physical Conditions" form about Moyers.  Doc. 10-15 at 4.  When asked to describe her professional qualifications, licensure, areas of specialization, and board certifications, Dr. Kayfan responded, "I will not."  Doc. 10-15 at 4.  Dr. Kayfan stated that Moyers has severe dyslexia and would likely be "off-task" for greater than 25% of a typical workday and could maintain attention and concentration for less than 30 minutes before requiring a break.  Doc. 10-15 at 4.  Dr. Kayfan opined that Moyers would likely be absent from work for more than 4 days per month.  Doc. 10-15 at 4.  Dr. Kayfan stated that Moyers' limitations would stem from fatigue and that Moyers could never lift anything.  Doc. 10-15 at 5.  Dr. Kayfan stated that Moyers could sit and stand/walk for less than one hour during a typical workday.  Doc. 10-15 at 5.  Dr. Kayfan stated that Moyers' legs should be elevated while sitting, does not need a cane or assistive device, and has no limitations using foot controls.  Doc. 10-15 at 6.  Dr. Kayfan stated that Moyers could never reach and could rarely handle, finger, feel, and push/pull with her left arm/hand.  Doc. 10-15 at 6.  Dr. Kayfan stated that Moyers could never stoop and could rarely balance, kneel, crouch, crawl, and rotate her head and/or neck.  Doc. 10-15 at 6.  Dr. Kayfan also stated that Moyers could never be exposed to dust/odors/fumes/pulmonary

14

irritants, extreme cold, extreme heat, and operating a vehicle. Doc. 10-14 at 112.

On November 14, 2022, Don Litchfield, DC, completed a "Medical Opinion – Physical Conditions" form about Moyers. Doc. 10-14 at 109. Dr. Litchfield stated that he began treating Moyers in 2008 as her chiropractor. Doc. 10-14 at 109. Litchfield opined that Moyers was likely to be "off-task" 20% of a typical workday and that Moyers could maintain attention for less than one or two hours before requiring a break. Doc. 10-14 at 109. Litchfield stated that Moyers would experience these limitations from side effects of medications, diabetes, fatigue, and from effects of pain. Doc. 10-14 at 110. Litchfield stated that Moyers could rarely carry less than 10 pounds and could sit for 1–2 hours and stand/walk for 1–2 hours during an 8-hour workday. Doc. 10-14 at 110. Litchfield stated that Moyers should elevate her legs while sitting and does not require a cane or other assistive device. Doc. 10-14 at 111. Litchfield also stated that Moyers would not have any limitations using foot controls. Doc. 10-14 at 111. Litchfield stated that Moyers could only occasionally reach with her left arm/hand and could frequently handle or finger using her left arm/hand due to numbness and pain. Doc. 10-14 at 111. Litchfield stated that Moyers could never crouch or crawl and could frequently rotate her head and/or neck. Doc. 10-14 at 111. Litchfield found that nerve root impingement could cause disability in Moyers' right arm and low back, and leg pain. Doc. 10-14 at 112. Litchfield stated that Moyers could frequently be exposed to

dust/odors/fumes/pulmonary irritants, extreme cold, extreme heat, and operating a vehicle.  Doc. 10-14 at 112.

On September 18, 2023, Amy Beth Hall, CRNP, completed a "Medical Opinion – Physical Conditions" form on Moyers' behalf.  Doc. 10-17 at 33.  Hall listed diabetes, hypertension, hyperlipidemia, and vitamin D deficiency as Moyers' diagnoses.  Doc. 10-17 at 33.  Hall stated that she was "unable to answer" questions about Moyers' non-exertional limitations, lifting/carrying, sitting/standing/walking, use of hands, postural activities, and environmental limitations because Moyers "has seen specialists for physical limitations."  Doc. 10-13 at 33.

On October 29, 2023, Amy Roberts, NP-C stated her medical opinion in a letter addressed to the ALJ.  Doc. 10-19 at 3.  Roberts reviewed Moyers' medical records and opined that Moyers "should be limited to standing and walking for no more than 3 hours in an 8 hour workday, sitting for 6 out of 8, lifting and carrying 10 lbs at most."  Doc. 10-19 at 3.

On November 2, 2023, after the Appeals Council remanded the case, with instructions to address the opinion of licensed chiropractor Don Litchfield, the ALJ held a second hearing on Moyers' application for benefits.  Doc. 10-3 at 76.

Moyers testified that she graduated high school and completed one year of college.  Doc. 10-3 at 78.

Moyers also testified that she last worked as a life insurance agent, where she

16

traveled from house to house to sell life insurance and long-term care policies. Doc. 10-3 at 79. Moyers testified that the heaviest item she had to pick up as a life insurance agent was a briefcase, but because it was too heavy for her to carry she used a rolling briefcase. Doc. 10-3 at 79. Moyers testified that, while she never weighed her briefcase, she believed that with her laptop inside the briefcase weighed close to 20 pounds. Doc. 10-3 at 80. Moyers testified that she had trouble lifting the briefcase out of her car. Doc. 10-3 at 81.

Moyers testified further that she was fired from her insurance job in 2018 because she "couldn't keep up with the production." Doc. 10-3 at 79. Moyers testified that she could not keep up with monthly sales requirements "physically or emotionally." Doc. 10-3 at 81.

Moyers testified that, after she was fired, she tried to find other jobs but "just wasn't able to do what they needed [her] to do." Doc. 10-3 at 79. Moyers testified that she could not stand "for any length of time" and had trouble getting in and out of a vehicle. Doc. 10-3 at 80. Moyers testified that she can use a computer but that she cannot sit "for any length of time" to use the computer. Doc. 10-3 at 80.

When asked about her treating relationship with Dr. Flora Kayfan, Moyers testified that Dr. Kayfan "just state[d] that [Moyers] wasn't really able to work due to [her] physical being" and that Kayfan "did sign a paper on [Moyers'] behalf stating that." Doc. 10-3 at 82.

17

Moyers testified that she was referred to Dr. Telang, a bone and joint specialist, for injections in her back and neck. Doc. 10-3 at 82. Moyers testified that she receives relief from the injections for "about three months" and then the pain "flares up again." Doc. 10-3 at 82. Moyers testified that, if she does anything "too strenuous," she is "in a lot of pain." Doc. 10-3 at 82. Moyers testified that she takes Gabapentin for pain. Doc. 10-3 at 82.

Moyers also testified that she tried physical therapy, but that it "really didn't work." Doc. 10-3 at 83. Moyers testified that she has seen Dr. Litchfield on a regular basis for "several years," "at least seven years, maybe eight." Doc. 10-3 at 83–84. Moyers testified that she sees Litchfield "[a]t least once a month," but if she is "in really bad shape" she sees Litchfield every two weeks. Doc. 10-3 at 83. Moyers testified that she brought Litchfield a form to fill out, but that she was not present when he filled out the form. Doc. 10-3 at 84. Moyers testified that Litchfield "thinks that [she's] got a lot of physical problems" and "has a lot of concerns about [her] physical wellbeing." Doc. 10-3 at 85. Moyers testified that Litchfield does "adjustments" to "align [her] back" and that he has reviewed her MRIs and x-rays. Doc. 10-3 at 85.

Moyers testified further that she can drive and that she drives herself to church, to the store, and to see her doctors. Doc. 10-3 at 85. Moyers testified that she cannot travel very far. Doc. 10-3 at 85. Moyers testified that Litchfield's office

18

is "about an hour" from her house, and sometimes she has a friend drive her to her appointments. Doc. 10-3 at 85–86.

Moyers testified that she sees a provider with Dr. Kayfan's practice "every three months" for blood work due to diabetes. Doc. 10-3 at 83. Moyers testified that she takes Metformin and glipizide for diabetes. Doc. 10-3 at 83.

Moyers also testified that she has seen Dr. Kayfan "probably four times." Doc. 10-3 at 87. Moyers testified that Dr. Kayfan asked her how much she could physically pick up, and that Moyers "told [Dr. Kayfan] that [she] was having problems with the grips and stuff in [her] hands." Doc. 10-3 at 88.

Moyers testified further that she can frequently handle things, but that she has "problems in [her] hands." Doc. 10-3 at 86. Moyers testified that she dropped a jug of milk and a pot of soup beans because she had "problems with the weight level." Doc. 10-3 at 86.

Vocational Expert (VE) Patsy V. Bramlett testified that a hypothetical individual with Moyers' age, education, work experience, and the limitations posed by the ALJ could perform jobs that exist in significant numbers in the national economy. Doc. 10-3 at 88–92.

C.    ALJ decision

On March 11, 2024, the ALJ entered an unfavorable decision. Doc. 10-3 at 22–37. In the decision, the ALJ concluded that Moyers "was not disabled under

sections 216(i) and 223(d) of the Social Security Act through March 31, 2022, the date last insured." Doc. 10-3 at 37.

The ALJ applied the five-part sequential test for disability (*see* 20 C.F.R. §§ 404.1520(a), 416.920(a); *Winschel*, 631 F.3d at 1178). Doc. 10-3 at 23–24. The ALJ found that Moyers did not engage in substantial gainful activity during the period from her alleged onset date of June 30, 2018, through her date last insured of March 31, 2022. Doc. 10-3 at 24. The ALJ found that Moyers has severe impairments of type 2 diabetes mellitus, hyperlipidemia, meniscus tear of the right knee (status post repair), and degenerative disc disease. Doc. 10-3 at 24–25.

The ALJ found that there is no evidence that the Moyers' obesity "has any specific or quantifiable impact on pulmonary, musculoskeletal, endocrine, or cardiac functioning" and that Moyers "has not established that obesity is severe" within the applicable regulations. Doc. 10-3 at 25.

The ALJ also found that, while Moyers' psychological evaluation by Jack C. Carney, Ph.D. showed that Moyers "had clinical findings consistent with a diagnosis of a major depressive disorder, moderate, with anxious distress," Moyers stated that "she had not been treated for her alleged mental problems or taking psychotropic medication." Doc. 10-3 at 25.

The ALJ found further that state agency psychiatric consultants Joanna Koulianos, Ph.D., and George Grubbs, Psy.D., determined that Moyers had a mild

20

limitation in her ability to understand, remember, or apply information; a mild limitation in her ability to interact with others; a mild limitation in the ability to concentrate, persist or maintain pace; and a mild limitation in the ability to adapt or manage oneself. Doc. 10-3 at 25. The ALJ found their opinions consistent with the evidence of record. Doc. 10-3 at 25.

The ALJ found that Moyers had minimal, if any, problem with short-term and long-term memory function. Doc. 10-3 at 26. The ALJ found that Moyers reported having no problems getting along with family, friends, or neighbors, but that she did not go out much. Doc. 10-3 at 26. The ALJ found that Moyers was able to concentrate sufficiently to offer testimony, shop, perform personal care activities, handle financial matters, watch television, drive a car, and carry on a conversation. Doc. 10-3 at 26. The ALJ found that Moyers needed no reminders to take care of personal needs, grooming, or to take her medicine. Doc. 10-3 at 26. The ALJ found that Moyers goes out alone and does not need someone to accompany her. Doc. 10-3 at 26.

The ALJ also found that Moyers did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in the applicable Social Security regulations. Doc. 10-3 at 27.

The ALJ then determined Moyers' residual functional capacity (RFC), finding that Moyers could "perform light work" as defined in the regulations, except that

she could occasionally lift and/or carry, including upward pulling of twenty pounds; could frequently lift and/or carry including upward pulling of ten pounds; could sit for six hours in an eight-hour workday with normal breaks; could stand and/or walk with normal breaks for six hours in an eight-hour workday; could push and/or pull, including operation of hand or foot controls up to the lift and carry restrictions of ten and twenty pounds; could not work on ladders, ropes, or scaffolds, unprotected heights, or around dangerous machinery; could frequently climb ramps and stairs; and could frequently balance, stoop, kneel, crouch, and crawl. Doc. 10-3 at 29.

Here, in analyzing Moyers' RFC, the ALJ stated that the ALJ "must follow a two-step process": (1) "determine[] whether there is an underlying medically determinable physical or mental impairment[] . . . that could reasonably be expected to produce the claimant's pain or other symptoms"; and (2) "evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's work-related activities." Doc. 10-3 at 29. According to the ALJ, where the claimant's statements about the intensity, persistence, or limiting effects of symptoms were not substantiated by objective medical evidence, the ALJ "must consider other evidence in the record to determine if the claimant's symptoms limit the ability to do work-related activities." Doc. 10-3 at 29.

In determining Moyers' RFC, the ALJ found that the evidence provided "does

22

not fully support [Moyers'] allegations of debilitating symptoms." Doc. 10-3 at 29. The ALJ found that Moyers "stated that her impairments limit her ability to lift, squat, bend, stand, reach, walk, sit, kneel, use her hands, and climb stairs." Doc. 10-3 at 29. The ALJ also found that Moyers testified that she was "unable to stand or sit for long periods due to back pain" and that she "has tried physical therapy, chiropractor, medications, and injections" but continues to experience pain "that radiates to her legs and feet." Doc. 10-3 at 29. The ALJ found that, while "the objective medical records document a history of these impairments, [Moyers'] treating and examining sources do not indicate that [her] symptoms are as debilitating as [Moyers] alleges." Doc. 10-3 at 29.

The ALJ considered Moyers' medical records, which show that Moyers had an arthroscopic surgery to her right knee, and that her physician "noted that she was weight-bearing to her knee and had good range of motion two weeks after surgery." Doc. 10-3 at 30. The ALJ considered that Moyers completed four visits of physical therapy and could stand and walk greater than sixty minutes, pain free." Doc. 10-3 at 30.

The ALJ also considered a doctor's appointment on October 3, 2018, where Moyers reported having trouble controlling her blood sugar and an imbalance in her right knee. Doc. 10-3 at 30. The ALJ considered the doctor's notes that Moyers' physical examination was normal, and that Moyers' condition had not significantly

worsened.  Doc. 10-3 at 30.

The ALJ found that the "record is void of any treatment records of [Moyers] in 2019 and most of 2020, until September 23, 2020."  Doc. 10-3 at 30.

The ALJ considered Moyers' appointment from September 23, 2020, where Moyers reported that she had not been compliant with her diabetes medication and where, while she reported continued right knee pain, she had no abnormalities.  Doc. 10-3 at 30.

The ALJ also considered Moyers' March 11, 2021 consultative physical examination with Dr. Laura Lindsey, who noted generally normal findings, including normal range of motion.  Doc. 10-3 at 30.  The ALJ found that, during that examination, Moyers was alert, fully oriented, and able to ambulate independently with a normal and coordinated gait.  Doc. 10-3 at 30.  The ALJ considered that Dr. Lindsey found that Moyers "did not appear limited by her medical condition and she could independently sit, stand, walk, hear, speak, carry, lift, travel, and handle objects."  Doc. 10-3 at 31.

The ALJ considered further Moyers' April 27, 2022 consultative physical examination with Dr. Laura Lindsey, where Dr. Lindsey formed the same opinion. Doc. 10-3 at 31.  The ALJ considered Dr. Lindsey's findings that Moyers' comprehension and speech were normal, motor strengths were normal, sensation was intact, and reflexes were normal.  Doc. 10-3 at 31.

24

After considering the record and subjective allegations, the ALJ found that Moyers' "statements concerning the intensity, persistence, and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record." Doc. 10-3 at 32.

The ALJ found, that during the relevant period, Moyers' "overall health was stable and well controlled with conservative treatment and without any exacerbation of significant problems." Doc. 10-3 at 32.

The ALJ considered the form submitted by chiropractor Don Litchfield, which was completed on November 14, 2022, several months after Moyers' date last insured of March 31, 2022. Doc. 10-3 at 32. Among other things, the ALJ found that Dr. Litchfield's "main obligation was to check a response from the prepared multiple choice answers" and that such "check and fill in the blank forms are conclusory and not persuasive." Doc. 10-3 at 32. The ALJ found that, while Litchfield stated that "he began treating [Moyers] in 2008, . . . there are no records from that period of time." Doc.10-3 at 32. The ALJ considered Litchfield's diagnosis of vertebral fixation in cervical, thoracic, and lumbar spine with pain in neck, arms, back, hips, legs, and feet. Doc. 10-3 at 32. The ALJ considered Litchfield's opinion that Moyers would be off task 20% of a typical workday and that she could maintain concentration for less than one or two hours before requiring a break. Doc. 10-3 at 32. The ALJ also considered Litchfield's opinion that Moyers

25

could rarely lift less than ten pounds, could sit one to two hours total in an eight-hour workday, and could stand/walk one to two hours in an eight-hour workday. Doc. 10-3 at 32–33.

The ALJ determined that Litchfield's opinion was not persuasive. Doc. 10-3 at 33. The ALJ found that the record contained no evidence of treatment by Litchfield and that treatment was not noted in the summary of evidence. Doc. 10-3 at 33. The ALJ also considered Moyers' testimony that she was not present when Litchfield completed the form and that Litchfield referenced MRI scans that were requested by other providers. Doc. 10-3 at 33. The ALJ found that, "[b]asically, there is no clinical evidence of any treatment by Dr. Litchfield to support his opinion." Doc. 10-3 at 33.

The ALJ then found that Dr. Laura Lindsey's "medical opinions are generally supported by her personal examination of [Moyers]; however, her opinions are not entirely consistent with the evidence from other medical and nonmedical sources, which indicates that [Moyers] did have some limitations." Doc. 10-3 at 34.

The ALJ considered the psychological evaluation from state agency consultant Jack Carney, Ph.D., who opined that Moyers "possessed the ability to understand, carry out and remember instructions in a work setting; and to respond appropriately to supervision, co-workers, and work pressures in a work setting." Doc. 10-3 at 34. The ALJ found that state agency consultant James B. Lindsey,

26

Psy.D. "similarly opined that [Moyers] appeared to have only a mild impairment in terms of her employability but her reported symptom history suggested periods of possible moderate impairment."  Doc. 10-3 at 34.

The ALJ then considered the "check and fill in the blank form" from Dr. Kayfan.  Doc. 10-3 at 34.  The ALJ found that Dr. Kayfan "failed to provide supporting reasoning or clinical findings, despite being instructed to do so," and that Dr. Kayfan refused to describe her professional qualifications.  Doc. 10-3 at 34.

The ALJ found that Dr. Kayfan's opinions unpersuasive.  Doc. 10-3 at 35. The ALJ found that Dr. Kayfan completed the form at the request of Moyers' counsel and that Sherry Clounch, NP was Moyers' primary care provider, not Dr. Kayfan. Doc. 10-3 at 35.  The ALJ also found that, "if [Dr. Kayfan's] check and fill in the blank form was taken literally, it would render [Moyers] disabled helpless" and that the "form was completed after the date last insured."  Doc. 10-3 at 35.

The ALJ considered a "Medial Opinion" form completed by Amy Beth Hall, CRNP, FNP-C, where Hall "placed a checkmark in a box indicat[ing] [Moyers] would not be limited to sedentary work as defined by SSA."  Doc. 10-3 at 35. Because Hall began treating Moyers "in early 2023, well past the date last insured, and not during the relative treatment period," the ALJ found Hall's assessments not persuasive.  Doc. 10-3 at 36.

The ALJ then considered a report from non-examining provider, Amy

27

Roberts, NP (dated October 29, 2023), where Roberts "opined [Moyers] could only stand and walk for no more than 3 hours and sit for 6 of 8 and lift and carry 10 pounds after her review of the records." Doc. 10-3 at 36. The ALJ found that Roberts' report was "not persuasive," as it differed from the opinions of the state agency physician. Doc. 10-3 at 36.

The ALJ found that while Moyers "testified, and understandably may honestly believe that [her] impairments are totally disabling," "the medical finding do not support the existence of limitations greater than the above listed residual functional capacity and that the residual function capacity reported above is justified." Doc. 10-3 at 36.

The ALJ then found that Moyers was capable of performing past relevant work as an insurance agent through the date last insured and that this work did not require the performance of work-related activities precluded by Moyers' residual functional capacity. Doc. 10-3 at 37.

Consequently, the ALJ found that Moyers "was not under a disability, as defined in the Social Security Act, at any time from June 30, 2018, the alleged onset date, through March 31, 2022, the date last insured." Doc. 10-3 at 37.

## DISCUSSION

In this appeal, Moyers argues that the ALJ's decision "is unsupported by substantial evidence and the product of legal error because the ALJ failed to properly

28

evaluate the medical opinion of Don Litchfield, DC." Doc. 14 at 1. Moyers contests the ALJ's supportability findings (Doc. 14 at 15), and argues that "the ALJ failed to provide any reasonable consistency analysis as to why longtime chiropractor Litchfield's less than sedentary medical source opinion was not credible" (Doc. 14 at 16).

Having carefully considered the record and the briefing, the court concludes that the ALJ properly evaluated the opinions of Dr. Litchfield based upon the proper legal standards, and that substantial evidence supports the ALJ's findings as to Litchfield's opinions. *See Lewis*, 125 F.3d at 1439.

Opinions about whether a claimant is disabled, the claimant's RFC, and the application of vocational factors "are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). Any opinion from a medical source may be relevant to the ALJ's findings but is not determinative, because it is the ALJ who must find the claimant's RFC. *See, e.g.*, 20 C.F.R. § 404.1546(c). In other words, the "task of determining a claimant's residual functional capacity and ability to work rests with the [ALJ], not a doctor." *Moore v. Social Sec. Admin., Comm'r*, 649 F. App'x 941, 945 (11th Cir. 2016); *see also* 20 C.F.R. § 404.1546(c) ("If your case is at the [ALJ] hearing level . . . , the [ALJ] . . . is responsible for assessing your residual functional capacity.").

29

In this regard, the ALJ's decision was based upon proper legal standards. *See Lewis*, 125 F.3d at 1439. As noted above, the ALJ's decision states that the ALJ considered the medical opinion evidence, including Litchfield's opinions, according to 20 C.F.R. § 404.1520c. *See* Doc. 10-3 at 29 ("The [ALJ] also considered the medical opinion(s) and prior administrative medical finding(s) in accordance with the requirements of 20 CFR 404.1520c.").

Under 20 C.F.R. § 404.1520c, an ALJ considers the medical opinions and prior administrative medical findings together using the following factors: supportability, consistency, relationship with the claimant, length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, examining relationship, specialization, and other factors. *Id*. § 404.1520c(a)–(c). When determining the persuasiveness of a medical source's medical opinion or a prior administrative medical finding, supportability and consistency are the most important factors, and the ALJ must explain how the ALJ considered those factors. *Id*. § 404.1520c(b)(2). The ALJ may explain how the ALJ considered the other factors, but the ALJ is not required to do so. 20 C.F.R. § 404.1520c(b)(2).

"Supportability" requires an ALJ to consider that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion[] or prior administrative medical

finding[], the more persuasive the medical opinion[] or prior administrative medical finding[] will be." 20 C.F.R. § 404.1520c(c)(1).

"Consistency" requires an ALJ to consider that "[t]he more consistent a medical opinion[] or prior administrative medical finding[] is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion[] or prior administrative medical finding[] will be." 20 C.F.R. § 404.1520c(c)(2).

In this case, substantial evidence supports the ALJ's findings on the supportability and consistency factors as to Litchfield's opinions. As explained above (and pursuant to 20 C.F.R. § 404.1520c), the ALJ found that Dr. Litchfield's "main obligation was to check a response from the prepared multiple choice answers," and that such "check and fill in the blank forms are conclusory and not persuasive." Doc. 10-3 at 32. The ALJ found that, "[w]hile th[e] form is admissible into evidence, it is not persuasive." Doc. 10-3 at 33.

On supportability, the ALJ found that "Litchfield states that he began treating [Moyers] in 2008," but that "there are no records from that period of time" (Doc. 10-3 at 32), and that there "is no clinical evidence of any treatment by Dr. Litchfield to support his opinion" (Doc. 10-3 at 33). The ALJ found that "the record contains no evidence of treatment by Chiropractor Litchfield and counsel fails to note any treatment from Chiropractor Litchfield in the summary of evidence." Doc. 10-3 at

31

33; *see id.* ("There are no medical records from this chiropractor.").  The ALJ found that Moyers "testified that she was not present when the chiropractor completed the form."  Doc. 10-3 at 33.

The ALJ found that Dr. Litchfield nevertheless diagnosed Moyers with vertebral fixation in cervical, thoracic, and lumbar spine with pain in neck, arms, back, hips, legs, knees, and feet.  Doc. 10-3 at 32.  The ALJ found that Litchfield "checked [Moyers] would be 'off task' 20% of a typical workday that would interfere with attention and concentration needed to perform even simple work-related tasks."  Doc. 10-3 at 32.  The ALJ found that Litchfield "checked [Moyers] could maintain attention and concentration <one hour and <two hours before requiring a break," and that "side effects of medications were fatigue, and effects of pain."  Doc. 10-3 at 32.  The ALJ found that Litchfield "checked [Moyers] could 'rarely' lift less than ten pounds."  Doc. 10-3 at 32.  The ALJ found that Litchfield "placed an 'x' that [Moyers] could sit one to two hours total in an eight-hour workday and stand/walk one to two hours in an eight-hour workday."  Doc. 10-3 at 32–33.

In addition, the ALJ found that Litchfield "checked 'yes' that [Moyers] would require a sit/stand option," that Litchfield "checked 'yes' [Moyers] would need the option to lie down or recline through-out the workday, and when sitting [Moyers'] legs would need to be elevated," and that Litchfield "placed 'x' marks on the

32

multiple choice answers that [Moyers] could occasionally reach overhead and in all other directions; frequently handle and finger; has 'numbness' with feeling; and pushing and pulling is limited with pain." Doc. 10-3 at 33. The ALJ found that Litchfield noted Moyers "could occasionally balance with dizziness; occasionally stoop 'off balance,' occasionally kneel with 'problem getting up,'" that Litchfield "placed an 'x' that [Moyers] could never crouch or crawl and frequently rotate head and/or neck," and that Litchfield "placed an 'x' that [Moyers] could have frequent exposure to dust, odors, fumes, pulmonary irritants, extreme cold, extreme heat, and operating a vehicle." Doc. 10-3 at 33.

On the supportability factor, the ALJ also found that Litchfield's notations are "speculative," finding—for example—that Litchfield noted that Moyers' MRI scan "suggests" impingement of the L4 nerve root and shows disc protrusion with "probable" neural impingement, that C5-6 nerve root impingement "could cause" disability in the right arm, and that low back and leg pain "may be" caused by L4 nerve root impingement. Doc. 10-3 at 33.

The ALJ found further that, "on th[e] form, Dr. Litchfield simply refers to the cervical and lumbar magnetic resonance imaging (MRI) scans as supportive documentation of his opinion but, according to the notation on these reports, these radiological tests were requested by Dr. [Flora] Kayfan, MD and Dr. Pavan Telang, rather than Dr. Litchfield." Doc. 10-3 at 33. For instance, the ALJ found that

33

Litchfield "wrote the MRI findings 'as stated already' as the documentation to support his assessment" (Doc. 10-3 at 32), and that Litchfield "indicated that [Moyers] does not require an assistive device and has no limitations in foot controls 'MRI findings as already stated' as support" (Doc. 10-3 at 33).

On the consistency factor, the ALJ found that Dr. Litchfield's form opinion "is not persuasive and such form does not constitute substantial evidence on the record" because Litchfield's "opinion is inconsistent with the other evidence including the opinions of the State Agency non-examining physicians who are familiar with the rules and regulations as well as the definitions of limitations." Doc. 10-3 at 33.

Pursuant to 20 C.F.R. § 404.1520c (and as explained above), the ALJ's decision summarized at length the record medical opinions and prior administrative medical findings—not just Dr. Litchfield's form opinion, but also the opinions of Laura M. Lindsey, MD, Jack Carney, Ph.D., James B. Lindsey, Psy.D., Flora Kayfan, MD, Amy Beth Hall, CRNP, NFP-C, and Amy Roberts, NP. Doc. 10-3 at 33–36.

On consistency (and as noted above), the ALJ then found that Litchfield's "opinion is inconsistent with the other evidence including the opinions of State Agency non-examining physicians who are familiar with the rules and regulations as well as the definitions of limitations." Doc. 10-3 at 33.

34

This court cannot reweigh the evidence (*see Winschel*, 631 F.3d at 1178), and there is sufficient evidence in the record to support the ALJ's findings on the supportability and consistency factors as to Litchfield's form opinion. Substantial evidence requires "such relevant evidence as a reasonable person would accept as adequate to support a conclusion" (*Crawford*, 363 F.3d at 1158), and the court must affirm an ALJ's factual findings if they are supported by substantial evidence, "[e]ven if the evidence preponderates against the Commissioner's findings" (*Crawford*, 363 F.3d at 1158–59 (quoting *Martin*, 894 F.2d at 1529)). Thus, the ALJ's findings with respect to Litchfield's opinions were based upon the proper legal standards and supported by substantial evidence. *See Lewis*, 125 F.3d at 1439.

## CONCLUSION

For the reasons stated above (and pursuant to 42 U.S.C. § 405(g)), the Commissioner's decision is **AFFIRMED**. The court separately will enter final judgment.

**DONE** and **ORDERED** this March 19, 2026.

_____
**NICHOLAS A. DANELLA**
UNITED STATES MAGISTRATE JUDGE

35